## JOSEPH FRANK *et al.*

*v.*

## SAMUEL A. TOLMAN *et al.*

1. JURISDICTION — *to determine the person entitled to receive payment of debt due from a bankrupt.* Where an insurance company is adjudged a bankrupt, and its assets placed in the hands of an assignee by proceedings in the Federal court, it seems that court has jurisdiction to determine the person entitled to share in the distribution upon a policy of insurance, and to determine whether an assignment of such policy is voidable on the ground of fraud practiced by the assignee upon the original holder; but when the United States court consents, the State courts may also take jurisdiction.

2. FRAUD — *as between vendor and vendee — representations.* Where the purchaser of a policy of insurance under which a loss had occurred, and which policy was issued by a company then in bankruptcy, and its affairs were so confused that no one except its officers knew or could know its condition, represented to the owner that he had been informed that the company could not pay more than twelve and a half per cent of its liabilities, and offered to give eleven per cent of the sum due on the policy, and it appeared that the owner did not rely upon such representation, but took several days to inform himself and decide whether to accept the offer, and then accepted the same, and it also appearing that claims on the company were then selling at ten cents on the dollar, and it afterwards turned out that the company was able to pay from sixty to one hundred per cent of its liabilities, it was *held,* that the facts would not warrant a court of equity in setting aside the sale for fraud, at the suit of the vendor.

3. MISTAKE — *as to value of thing sold, no ground for setting aside a sale.* It is not every mistake in the sale of personal property or *choses in action,* especially where it relates alone to its value, which will call into operation

the equity powers of the court. The fact that a claim on an insolvent corporation was believed, by both the vendor and purchaser, to be worth not more than from ten to twelve and a half cents on the dollar, when a subsequent investigation showed that the assets of the company were sufficient to pay from sixty to one hundred cents on the dollar, will furnish no ground for a court of equity to set aside a sale of the claim for eleven cents on the dollar, in the absence of proof of any imposition or fraud practiced by the purchaser on the vendor.

APPEAL from the Circuit Court of Cook county; the Hon. WILLIAM W. FARWELL, Judge, presiding.

This was a bill in chancery, exhibited by Joseph Frank, Henry L. Frank, Isaac Meyer and Henry C. Frank against Samuel A. Tolman, John A. King, M. J. Whitman, S. H. Southwick, and Henry W. Bishop, assignee in bankruptcy of the State Insurance Company. The opinion of the court states the object of the bill and the substance of the material facts.

Mr. JOHN WOODBRIDGE, for the appellants.

Mr. JOHN VAN ARMAN, for the appellees.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

The undisputed facts of the case are, that appellants received a policy of insurance on their property for $5,000 from the State Insurance Company; that they suffered a total loss by the fire of October 9, 1871, and that proof was made and the loss adjusted, whereby the company became liable to pay the full amount of the insurance; that the company, after the fire, suspended business, and in the spring of 1872 were put into bankruptcy; that in July, 1872, appellants sold their policy to one M. J. Whitman, and received from him $550, being eleven cents on the dollar of the nominal amount of the policy. On the next day Whitman and Southwick sold the policy to Tolman and King, receiving $1,000 for the same, and delivered the proofs of loss to them. When these transactions occurred,

82—75TH ILL.

appellants were not informed of the condition of the company, or the probable amount it would ultimately pay. And it seems that the assets in the hands of the assignee were sufficient to pay from sixty to one hundred per cent on the claims against the company when the sale was made.

Upon discovering the fact that the assets of the company were capable of paying so large a per cent, appellants filed their bill, first in the Federal court, which was dismissed for want of jurisdiction, and then in the circuit court of Cook county, to set aside the sale. It is claimed in the bill that Whitman was only the agent of Tolman and King, and purchased the policy for them ; that in making the purchase Whitman knowingly, and for the purpose of deceiving appellants, made false and fraudulent representations as to the value of the policy, and that the assets would not pay more than twelve and a half cents on the dollar, and that sales of policies on the company had been made at ten cents, when he knew that such statements were false, and that appellants relied upon them as true, and were thus induced to make the sale at the price they did.

The court below, on the evidence adduced, refused the relief and dismissed the bill, and the case is appealed to this court.

Considering this whole case, it develops some startling delinquencies in the officers of the company and others, in dealing with the trust fund, that should have been held for the policy holders. But as it only incidentally affects this case, we deem it unimportant to determine its precise character, or its effect on the rights of policy holders. That will, no doubt, be properly done in the court where the adjustment of these policies and the application of the assets of the company will be made. Nor can we perceive why this dispute could not have been more speedily and as well adjusted in the Federal court, on an order on the assignee to pay the money to the person entitled. The fund is in the hands of the officer of that court, and entirely under its control. The assets are in the custody of the law, under provisions of the bankrupt act. And it seems to us that

the most natural, expeditious and the cheapest mode of determining which of two claimants to a portion of the fund thus situated, is entitled to its receipt, would be to summarily hear evidence on a new petition to the bankrupt court, without bill, or action at law, to determine the rights of parties; but as it appears that the United States circuit court has consented that the circuit court of Cook county may take jurisdiction, and the question has not been raised, we shall proceed to consider and determine the case.

It is urged that Whitman was guilty of fraud in making the purchase of this policy; that he represented that he was familiar with the affairs of the company, and falsely and fraudulently represented to appellants that the assets would not pay more than twelve and a half per cent on the indebtedness proved up against it before the commissioner in bankruptcy, and that appellants relied upon his representations as true, and were thereby induced to sell the claim to him at eleven per cent of the face of the claim. An attentive examination of the evidence, we think, fails to show he represented himself as being familiar with the affairs of the company. All that can be claimed is, that he may have said he had information from a reliable source, but there is no evidence that from that information he knew that his representation was untrue. From the evidence, it would seem that the officers of the company had so returned their schedules and had so kept their books that none but the most intelligent could, without patient examination, have learned or even approximated the amount of dividends that would ultimately be paid. The books of the company and their schedules were confused, contained false entries, and failed to specify amounts of debts owing to and from the company. We understand this to be the purport of the testimony of King on that subject. And in that confused state it apparently showed, as he says, but about $17,000 of assets of the company. He testified, that just before he made the purchase, and when he commenced the investigation, he could not have said that the assets would have paid twelve and a half cents on the dollar.

The proof shows that the market price of these claims, about the time this was sold, was ten cents on the dollar.   And with the shrewd men in business in the city, if the true condition of the company could have been readily ascertained, we may well suppose it would have been found by parties in interest without much delay.   And if other holders of policies did not learn the fact, why should we suppose that Whitman knew the facts.   He was, as the evidence shows, but an insurance broker, buying and selling these policies on this and other companies for about one per cent commission.   Can any one believe that he would have sold at such low rates and at so small a per cent profit had he known the true condition of the company ? We presume no one would so conclude.   The love of gain is too strong for men to so act ; nor can we believe that Whitman was an exception to the rule ; at any rate it is not shown.

Nor do we believe, although he so testified, that Frank relied, to any considerable extent, on the representations of Whitman. The former did not sell at the first interview, although he virtually admits that he knew that such claims had been selling at ten cents on the dollar.   But he takes time for two or three days.   For what purpose, unless to find whether the selling rate was higher ?   As a good business man, we would naturally expect that he would pursue just such a course under the circumstances.   If such was his purpose, can any one doubt that he acquired information that satisfied him of the market value of such claims ?   We presume not.   It is true that he affects a want of information in reference to his claim that we could hardly expect, considering its large size.   But we must say that his manner of testifying is little, if any, more satisfactory than Whitman's.   They both seem to have evaded answering some questions that would not have been expected of fair witnesses.   We are, from the whole evidence, unable to say that it is proven that Whitman acted fraudulently in the matter, or that the sale should be set aside on that ground.

But it is urged that, if the evidence fails to establish fraud,

it clearly proves that the parties acted under mutual mistake as to the facts. That there was mistake, there would seem to be but little doubt. But does such a mistake require a court of equity to set aside the sale, and to place the parties *in statu quo?* It is not every mistake in the sale of personal property, or choses in action, especially where it relates alone to its value, which will call into operation the equity powers of the court. In fact, it is but seldom that such powers are exercised in reference to such sales. It is the policy of the law to leave trade and commerce free and untrammeled, so far as their interests require. Usually the parties must protect their interests in all commercial transactions by exacting warranties, guaranties, and actions at law for frauds and dishonest impositions. If a court of equity were, in all cases of mistake in such sales, to assume to afford relief, it would operate to impede trade and greatly hinder commercial operations. The policy of the law is to leave personal property and all of the incidents of trade as free as possible, consistent with the interests of communities and the public welfare.

In this case, appellant had a claim on an insolvent insurance company, or one generally supposed to be insolvent, the affairs of which were being adjusted and wound up in bankruptcy. At the time the sale was made, we infer from the evidence that all considered it but a venture, a kind of hazard, to purchase claims against the company, as they were selling at one-tenth of their nominal value. The sources of information were open equally to both parties, and each seems to have taken the hazard. Neither knew or could know what the expense of administering the assets of the company would be, nor the amount that would be realized from the assets. Whether large sums had been held back, or whether other large sums would be wasted by the assignee or expended in litigation, no one could tell. It was all a matter of conjecture. There is no pretense that either party examined the books of the company, or if they had, that it would have affected the sale in the slightest degree. Had

nothing been realized on the claim from the assets, would any one claim that the purchaser could, on the ground of mutual mistake, have recovered back the money he had paid for its purchase?

If relief were granted in this case because there is such disparity in the price paid, to the ultimate value of the thing sold, why not when it is less, if there is only a mistake as to its true value? And if because the article purchased is of greater value than supposed, then relief should be granted when it is of less value? It has always been supposed that, where there is a sale without warranty, guaranty, or fraud, it is purely at the risk of the parties. It is one of the firmly established rules of equity, that the mere inadequacy of the price paid is not a ground of relief. But, as we understand this case, that is the only ground upon which we could reverse the decree of the court below. It cannot be supposed that in the sale of chattels any different rule should obtain. If it should, then a majority of such sales would not stand the test, as all purchases for profit are made on the supposition that the buyer is getting the articles for less than he will be able to sell them. This is the very life of trade. If it were not so, it would languish and die. We are constrained to hold that the purchase by Whitman was valid, and that he acquired an equitable title to the claim, and if so, he transmitted a like title to the purchasers from him. The decree of the court below must be affirmed.

*Decree affirmed.*